# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| HALLEY ASCHER, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>    vs.<br><br>FURUKAWA ELECTRIC CO. LTD.; AMERICAN FURUKAWA INC.; JUNICHI FUNO; HIROTSUGU NAGATA; TETSUYA UKAI; SUMITOMO ELECTRIC INDUSTRIES LTD.; YAZAKI CORP.; YAZAKI NORTH AMERICA INC.; LEAR CORP.; DELPHI AUTOMOTIVE LLP; S-Y SYSTEMS TECHNOLOGIES GMBH; AND LEONI AG,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by her attorneys, brings this civil action for damages and injunctive relief on behalf of herself and others similarly situated against the above named Defendants, and demanding a trial by jury, complains and alleges as follows:

## JURISDICTION AND VENUE

1.    This Complaint is filed and these proceedings are instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief under federal antitrust laws and to recover treble damages and the cost of suit, including reasonable attorneys' fees under state antitrust and consumer protection laws and restitution under common law, against Defendants for the injuries Plaintiff and members of the Class sustained by means of Defendants' misconduct.

2.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1337, and by the Clayton Act, 15 U.S.C. §§ 15(a) and 27.  The Court also has diversity jurisdiction

over this class action pursuant to the Class Action Fairness Act of 2006, which *inter alia*, amends 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interests and costs.  28 U.S.C. §§ 1332(d)(2) and (6).

3.      The interstate commerce described in this Complaint is carried on, in part, within this District.  Venue is proper in this District pursuant to the provisions of 15 U.S.C. § 22 and 28 U.S.C. § 1391.  Each of the Defendants resides in, transacts or transacted business in, maintains offices or is found within, and a substantial part of the acts or omissions complaint above took place within, this District.  This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1367 and 1332.

## DEFINITIONS

4.      As used herein, the term "Automotive Wiring Harnesses" means automobile electrical distribution systems used to direct and control electronic components, wiring and circuit boards in cars.

5.      The term "related products," when used in conjunction with Automotive Wiring Harnesses, means automobile electrical wiring, lead wire assemblies, cable bond, automotive wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors.

6.      As used herein, the term "Class Period" means the time period from January 1, 2000 to the present.

## THE PARTIES

7.      Plaintiff Halley Ascher is a resident of the State of Maryland.  Ascher bought Automotive Wiring Harnesses indirectly from the Defendants during the Class Period.

8.      Defendant Furukawa Electric Co. Ltd. ("Furukawa") is a Japanese corporation. At all relevant times, Furukawa manufactured Automotive Wire Harnesses that were sold and/or purchased throughout the United States during the Class Period, including in this District.

9.      Defendant American Furukawa Inc. ("American Furukawa") is incorporated in the State of Delaware and is headquartered in Plymouth, Michigan.  At all relevant times, American Furukawa manufactured Automotive Wire Harnesses that were sold and/or purchased throughout the United States during the Class Period, including in this District..

10.     Based on information and belief, Defendant Junichi Funo, ("Funo") was a former manager of American Furukawa in its Honda sales division.

11.     Based on information and belief, Defendant Hirotsugu Nagata, ("Nagata") was the former Chief Financial Officer of American Furukawa.

12.     Based on information and belief, Defendant Tetsuya Ukai, ("Ukai") was a former manager of American Furukawa in its Honda sales division.

13.     Defendant Sumitomo Electric Industries Ltd.  ("Sumitomo") is a Japanese Corporation.  Defendant Sumitomo manufactured Automotive Wire Harnesses that were sold and/or purchased throughout the United States during the Class Period, including in this District.

14.     Defendant Yazaki Corp. ("Yazaki") is a Japanese Corporation with corporate and manufacturing facilities worldwide.  Defendant Yazaki manufactured Automotive Wire Harnesses that were sold and/or purchased throughout the United States during the Class Period, including in this District.

15.     Defendant Yazaki North America Inc. ("Yazaki North America") is incorporated in Illinois and is headquartered in Canton, Michigan.  Yazaki North America is a subsidiary of Yazaki. Defendant Yazaki manufactured Automotive Wire Harnesses that were sold and/or purchased throughout the United States during the Class Period, including in this District.

16.     Defendant Lear Corp. ("Lear") is incorporated in Delaware with headquarters in Southfield, Michigan.  Defendant Lear manufactured Automotive Wire Harnesses that were sold and/or purchased throughout the United States during the Class Period, including in this District.

17.     Defendant Delphi Automobile LLP ("Delphi") is incorporated in Delaware with headquarters in Troy, Michigan. Defendant Delphi manufactured Automotive Wire Harnesses

3

that were sold and/or purchased throughout the United States during the Class Period, including in this District.

18.     Defendant S-Y Systems Technologies, GMBH ("S-Y") is a German corporation. Defendant S-Y manufactured Automotive Wire Harnesses that were sold and/or purchased throughout the United States during the Class Period, including in this District.

19.     Defendant Leoni AG ("Leoni") is a German corporation.  Defendant Leoni manufactured Automotive Wire Harnesses that were sold and/or purchased throughout the United States during the Class Period, including in this District.

## CO-CONSPIRATORS

20.     Various other persons, firms, and corporations, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the violations alleged herein and have performed acts and made statements in furtherance thereof.

21.     The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

22.     Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated.  Plaintiff seeks to represent the following class ("New Class") pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

> All persons and entities that purchased Automotive Wiring Harnesses (either as a stand-alone product or as a component of a new automobile) during the Class Period in the United States indirectly from any of the Defendants for their own use and not for resale. Excluded from the Class are: governmental entities, any judge, justice or judicial officer

presiding over this matter and the members of his or her immediate family, Defendants and their co-conspirators, along with their respective parents, subsidiaries and/or affiliates.  Also excluded from this Class are the legal representatives, heirs, successors and attorneys of any excluded person or entity, and any person acting on behalf of any excluded person or entity.

24.    Plaintiff also seeks to represent the following Class ("Used Class") pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

All persons and entities that purchased Automotive Wiring Harnesses as a component of a used automobile during the Class Period in the United States indirectly from any of the Defendants for their own use and not for resale. Excluded from the Class are: governmental entities, any judge, justice or judicial officer presiding over this matter and the members of his or her immediate family, Defendants and their co-conspirators, along with their respective parents, subsidiaries and/or affiliates.  Also excluded from this Class are the legal representatives, heirs, successors and attorneys of any excluded person or entity, and any person acting on behalf of any excluded person or entity.

25.    Both classes are collectively referred to as the "Class."

26.    Subject to additional information obtained through further investigation and discovery, the foregoing Class definitions may be expanded or narrowed by amendment or amended complaint.

26.    This action has been brought and may properly be maintained as a class action, pursuant to the provisions of the Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the Class:

a.    <u>Numerosity</u>:  Members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains thousands and perhaps tens of thousands of members.  The precise number of Class members is unknown to Plaintiff.  Throughout the period covered by this

Complaint, Defendants and their co-conspirators engaged in the business of marketing and selling Automotive Wiring Harnesses throughout the United States.

      b.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of fact and law exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common factual and legal questions include:

      i.    whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, Automotive Wiring Harnesses;

      ii.    whether the combination or conspiracy caused Automotive Wiring Harnesses prices to be higher than they would have been in the absence of Defendants' conduct;

      iii.    the operative time period of Defendants' combination or conspiracy;

      iv.    whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class;

      v.    the appropriate measure of the amount of damages suffered by the Class;

      vi.    whether Defendants' conduct violates Section 1 of the Sherman Act;

      vii.    whether Defendants' conduct violates Sections 16720 and 17200 of the California Business and Professions Code;

      viii.    whether Defendants' conduct violates the antitrust, unfair competition, and consumer protection laws of the other states as alleged below; and

      ix.    the appropriate nature of class-wide equitable relief.

      c.    <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class since Plaintiff indirectly purchased Automotive Wiring Harnesses from one or more Defendants during the Class Period, as did each member of the Class.  Furthermore, Plaintiff and all members of the Class sustained monetary injury arising out of Defendants' wrongful conduct.

d.    Adequacy:  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class that she seeks to represent; she has retained counsel competent and highly experienced in complex class action litigation; and intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately represented by Plaintiff and her counsel.

e.    Superiority:  A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for individual members of the Class to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## NATURE OF TRADE AND COMMERCE

27.    Automotive Wiring Harnesses are a homogenous product sold by Defendants and purchased by Plaintiff and members of the Class primarily on the basis of price.

28.    Throughout the period of time covered by this Complaint, Defendants and their co-conspirators engaged in the business of manufacturing, marketing and selling Automotive Wiring Harnesses throughout the United States.  During the Class Period, total sales of Automotive Wiring Harnesses were in the billions of dollars.

29.    The market for the manufacture and sale of Automotive Wiring Harnesses is conducive to the type of collusive activity alleged here, as it is subject to high manufacturing and technological barriers to entry.  Efficient fabrication plants are large and expensive.

7

30.     The Automotive Wiring Harnesses market is oligopolistic in nature, with Defendants controlling the majority of the market.

31.     Manufacturers of automobiles and resellers of Automotive Wiring Harnesses purchase Automotive Wiring Harnesses directly or indirectly from Defendants.  These harnesses are then sold, directly or indirectly, to consumers.

## THE AUTOMOTIVE WIRING HARNESS BUSINESS

32.     When purchasing Automotive Wiring Harnesses and related products, automobile manufacturers issue Requests for Quotation ("RFQ's") to automotive parts suppliers on a model-by-model basis for model specific parts.

33.     Automotive parts suppliers submit quotations, or bids, to the automobile manufacturers in response to RFQs, and the automobile manufacturers award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production. Japanese automobile manufacturers procure parts for U.S.-manufactured vehicles both in Japan and the United States.

## DEFENDANTS' ILLEGAL CONDUCT

### Global Antitrust Investigations

34.     Since some time prior to February 8, 2010, global antitrust authorities have been investigating price fixing and bid rigging in the automobile parts industry.

35.     This has included authorities from the United States, Europe, and Japan.

36.     This has involved multiple surprise raids in multiple countries on entities suspected in participating in this conspiracy.  News reports indicate several of these raids involved companies supplying Toyota, Honda, and other automobile manufacturers.

37.     One of these raids occurred in February 2010, when Japan's Fair Trade Commission raided the Tokyo offices of Furukawa Electric Co. Ltd, Sumitomo Electric Industries Ltd. and Yazaki Corp.

8

38.     The United States Federal Bureau of Investigation conducted similar raids on February 23, 2010 in the United States on Yazaki North America Inc. in Canton Township, Michigan, Denso International America Inc. in Southfield, Michigan and Tokai Rika Group North America in Plymouth Township, Michigan.

39.     In the wake of these raids, Department of Justice spokesperson Gina Talamona stated that "[t]he antitrust division is investigating the possibility of anti-competitive cartel conduct of automotive electronic components suppliers" and that the antitrust division was "coordinating with the European Commission and other foreign competition authorities" in their investigation.

40.     Similarly, on or about February 24, 2010, officials from the European Commission executed surprise raids on Defendants Lear and Leoni, as well as TRW Automotive Inc.

41.     In their press release announcing the raid, the European Commission stated:

> The European Commission can confirm that, starting on 24 February 2010, Commission officials carried out unannounced inspections in several Member States at the premises of companies active in the sector of automotive electrical distribution systems (sometimes referred to as wiring harnesses) and of other components for automotive electronic and electrical distribution systems. The Commission has reason to believe that the companies concerned may have violated EU antitrust rules that prohibit cartels and restrictive business practices (Article 101 of the Treaty on the Functioning of the European Union – TFEU and Article 53 of the Agreement on the European Economic Area). The Commission's investigation is being coordinated with several other competition authorities worldwide

42.     In the wake of the raids, one senior original equipment manufacturer ("OEM") purchasing representative admitted that "market division . . . is a concern of ours."

43.     In the winter of 2010, Lear's Chief Executive Officer, Bob Rossiter admitted the EC was investigating Lear regarding anti competitive practices involving its Automotive Wiring Harnesses.  Similarly, Delphi acknowledged that it received an inquiry from the EC in

connection with its Automotive Wiring Harnesses, and Defendant S-Y acknowledged that the company was under investigation and agreed to cooperate with antitrust investigators.

## Guilty Pleas

44.     On September 29, 2011, Furukawa Electric Co. Ltd. and three of its executives (Junichi Funo, Hirotsugu Nagata and Tetsuya Ukai) pled guilty to conspiring to rig bids for and to fix, stabilize and maintain the prices of Automotive Wiring Harnesses and related products sold to customers in the United States and elsewhere.

45.     Furukawa agreed to pay $200 million in connection with its plea, and the three individual defendants agreed to serve prison time, ranging from a year and a day to 18 months.

46.     Furukawa's Information indicated that it and its' co-conspirators manufacture Automotive Wiring Harnesses (1) in the United States for installation in vehicles manufactured and sold in the United States, (2) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States, and (3) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

47.     The Information also indicated that "[f]rom at least as early as January 2000 and continuing until at least January 2010, the exact dates being unknown to the United States, Defendant and its co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to automobile manufacturers in the United States and elsewhere" and that "[t]he charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendant and its co-conspirators, the substantial terms of which were to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to automobile manufacturers in the United States and elsewhere."

48.     Specific anticompetitive conduct outlined in the Information included the following:

a.      participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

b.      agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

c.      agreeing, during those meetings, conversations, and communications, to allocate the supply of automotive wire harnesses and related products sold to automobile manufacturers in the United States and elsewhere on a model-by-model basis;

d.      agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

e.      submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

f.      selling automotive wire harnesses and related products to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

g.      accepting payment for automotive wire harnesses and related products sold to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

h.      engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

i.      employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

## ACTIVE CONCEALMENT

49.     Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff.  Defendants and their

co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.  Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.  Defendants and their co-conspirators concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.  Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this class action litigation was commenced.

50.     As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### VIOLATIONS ALLEGED

### First Claim for Relief

### (For injunctive relief under Section 16 of the Clayton Act for Defendants' Violation of Section 1 of the Sherman Act)

51.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

52.     Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 2000, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for Automotive Wiring Harnesses in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

53.     The alleged acts, agreements, combinations and/or conspiracies have caused artificially high prices for Automotive Wiring Harnesses purchased by consumers who are members of the Class.  Plaintiff and the Class have suffered damages and face a threatened loss in violation of antitrust law if injunctive relief is not obtained.

12

54.     To ensure Plaintiff and the Class are no longer harmed in the future by the misconduct as alleged herein, Plaintiff seeks an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF

### (Violation of State Antitrust and Unfair Competition Laws)

55.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

56.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Alabama Code §8-10-1 *et seq.*

57.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Arizona Revised Stat. §44-1401 *et seq.*

58.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of California Bus. & Prof. Code §l6700 *et seq.* and Cal. Bus. & Prof. Code §17200 *et seq.*

59.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §28-4502 *et seq.*

60.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Iowa Code §553.1 *et seq.*

61.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §50-101 *et seq.*

62.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §1101 *et seq.*

63.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws. Ann. §445.772 *et seq.*

64.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §325D.51 *et seq.*

65.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 *et seq.*

66.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §59-801 *et seq.*

67.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §598A *et seq.*

68.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §57-1-l *et seq.*

69.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §75-l *et seq.*

70.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §51-08.1-01 *et seq.*

71.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of the Pennsylvania common law.

72.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §37-1-3.1 *et seq.*

73.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §47-25-101 *et seq.*

74.     By reason of the foregoing, defendants have entered into agreements in of trade in violation of Vermont Stat. Ann. 9 §2453 *et seq.*

75.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of West Virginia §47-18-1 *et seq.*

76.     By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §l33.01 *et seq.*

77.     Class Members in each of the states listed above paid supra-competitive, inflated prices for Automotive Wiring Harnesses. As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in

that they paid more for Automotive Wiring Harnesses than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## THIRD CLAIM FOR RELIEF

### (Violation of State Consumer Protection and Antitrust Laws)

78.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

79.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

80.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §45.50.471 *et seq.*

81.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code §4-88-101 *et seq.*

82.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Bus. & Prof. Code § 17200 *et seq.*

83.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code §28-3901 *et seq.*

84.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. §501.201 *et seq.*

85.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. §480-1 *et seq.*

86.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §48-601 *et seq.*

87.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. §50-623 *et seq.*

88.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Maine Rev. Stat. §207 *et seq.*

89.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code §30-14-101 *et seq.*

90.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Rev. Stat. §59-1601 *et seq.*

91.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. §57-12-1 *et seq.*

92.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New York Gen. Bus. Law §349 *et seq.*

93.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. §75-1.1 *et seq.*

94.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Oregon Rev. Stat. §646.605 *et seq.*

95.     Defendants have engaged in unfair competition or unfair or deceptive acts or violation of Rhode Island Gen. Laws. §6-13.1-1 *et seq.*

96.     Defendants have engaged in unfair competition or unfair or deceptive acts or violation of South Carolina Code Laws §39-5-10 *et seq.*

97.     Defendants have engaged in unfair competition or unfair or deceptive acts or violation of Utah Code §13-11-1 *et seq.*

98.     Defendants have engaged in unfair competition or unfair or deceptive acts or violation of 9 Vermont §2453 *et seq.*

99.     Defendants have engaged in unfair competition or unfair or deceptive acts or violation of West Virginia Code §46A-6-101 *et seq.*

100.     Defendants have engaged in unfair competition or unfair or deceptive acts or violation of Wyoming Stat. §40-12-105.

101.     Class Members in the states listed above paid supra-competitive, artificially for Automotive Wiring Harnesses. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in their business and property

16

in that they paid more for Automotive Wiring Harnesses than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment and Disgorgement of Profits)

102.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

103.   Defendants have been unjustly enriched through overpayments by Plaintiff and Class members and the resulting profits.

104.   Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and Class members.

105.   Plaintiff seeks disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A.   That the Court determine that the Sherman Act, state antitrust law, and state consumer protection and/or unfair competition law claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B.   That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

   a.   A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

   b.   An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust laws identified herein;

   c.   Violations of the state consumer protection and unfair competition laws identified herein; and

       d.      Acts of unjust enrichment.

C.     That Plaintiff and the Class recover damages, as provided by federal and state antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

D.     That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner:

       a.      continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose effect; and

       b.      communicating or causing to be communicated to any other person engaged in the sale of Automotive Wiring Harnesses, information concerning bids of competitors;

E.     That Plaintiff be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

F.     That Plaintiff and members of the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

G.     That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

H.    That Plaintiff and members of the Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the members of the Class, hereby demand trial by jury on all issues so triable.

DATED:  October 19, 2011                Respectfully submitted,

/s/ Patrick E. Cafferty
Patrick E. Cafferty
**CAFFERTY FAUCHER LLP**
101 North Main Street, Suite 565
Ann Arbor, MI 48104
Telephone: 734-769-2144
Facsimile: 734-769-1207
pcafferty@caffertyfaucher.com
Bar No. P35613

Douglas G. Thompson
dthompson@finkelsteinthompson.com
Michael G. McLellan
mmclellan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
James Place
1077 30th Street, N.W.
Suite 150
Washington, D.C. 20007
Telephone: 202-337-8000
Facsimile: 202-337-8090